1

2

3

4

5

6

7

8

# UNITED STATES DISTRICT COURT

9

### EASTERN DISTRICT OF CALIFORNIA

10

11

MARGARITA HERNANDEZ RIVERA,

12

Plaintiff,

13

v.

14

COMMISSIONER OF SOCIAL SECURITY,

15

Defendant.

16

17

18

Case No.  1:21-cv-00761-SAB

ORDER DENYING PLAINTIFF'S SOCIAL SECURITY APPEAL

(ECF Nos. 20, 24, 25)

19

**I.**

20

**INTRODUCTION**

21     Plaintiff Margarita Hernandez Rivera ("Plaintiff") seeks judicial review of a final decision

22   of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her

23   concurrently submitted applications for Social Security benefits pursuant to Title II and Title XVI

24   of the Social Security Act.  The matter is currently before the Court on the parties' briefs, which

25   were submitted without oral argument, to Magistrate Judge Stanley A. Boone.[1]  For the reasons

26   set forth below, Plaintiff's appeal shall be denied.

27

28   _____
[1]  The parties have consented to the jurisdiction of the United States Magistrate Judge and this action has been assigned to Magistrate Judge Stanley A. Boone for all purposes.  (ECF Nos. 7, 10, 11.)

1

**II.**

**BACKGROUND**[2]

Plaintiff concurrently filed the instant applications for Social Security benefits under Title II and for Supplemental Security Income ("SSI") under Title XVI on October 4, 2018, alleging disability beginning December 31, 2016.  (See Admin. Rec. ("AR") 222–35, ECF Nos. 12-1, 12-2.)  Plaintiff's claims were initially denied on January 31, 2019, and denied upon reconsideration on April 26, 2019.  (AR 89–90, 115–16.)  On October 26, 2020, Plaintiff, represented by counsel,[3] appeared via telephonic conference, for an administrative hearing before Administrative Law Judge Bryan Henry (the "ALJ").  (AR 39–66.)  Vocational expert ("VE") Amanda Munzer, also testified at the hearing.  On November 10, 2020, the ALJ issued a decision denying benefits.  (AR 13–38.)  On March 31 2021, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.  (AR 1–8.)

Plaintiff initiated this action in federal court on May 12, 2021, and seeks judicial review of the denial of her applications for benefits.  (ECF No. 1.)  The Commissioner lodged the administrative record on March 4, 2022.  (ECF No. 12.)  On July 21, 2022, Plaintiff filed her opening brief/motion for summary judgment.  (ECF No. 20.)  On August 31, 2022, Defendant filed an opposition and cross-motion for summary judgment.  (ECF No. 24.)  Plaintiff filed a reply brief on September 15, 2022, and the matter is now deemed submitted on the pleadings.  (ECF No. 25.)

**III.**

**LEGAL STANDARD**

**A.      The Disability Standard**

To qualify for disability insurance benefits under the Social Security Act, a claimant must show she is unable "to engage in any substantial gainful activity by reason of any medically

---

[2] For ease of reference, the Court will refer to the administrative record by the pagination provided by the Commissioner and as referred to by the parties, and not the ECF pagination.  However, the Court will refer to the parties' briefings by their ECF pagination.

[3] At the administrative level as well as the instant appeal, Plaintiff was represented by attorney Jonathan O. Pena, of the law firm Pena & Bromberg, PC.  (See AR 19; ECF No. 20 at 1.)

determinable physical or mental impairment[4] which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The Social Security Regulations set out a five-step sequential evaluation process to be used in determining if a claimant is disabled.  20 C.F.R. § 404.1520;[5] Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1194 (9th Cir. 2004).  The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

> Step one: Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is not disabled.  If not, proceed to step two.
>
> Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work?  If so, proceed to step three.  If not, the claimant is not disabled.
>
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1?  If so, the claimant is disabled.  If not, proceed to step four.
>
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work?  If so, the claimant is not disabled.  If not, proceed to step five.
>
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).  The burden of proof is on the claimant at steps one through four.  Ford v. Saul, 950 F.3d 1141, 1148 (9th Cir. 2020).  A claimant establishes a *prima facie* case of qualifying disability once she has carried the burden of proof from step one through step four.

    Before making the step four determination, the ALJ first must determine the claimant's

---

[4] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. § 423(d)(3).

[5] The regulations which apply to disability insurance benefits, 20 C.F.R. §§ 404.1501 et seq., and the regulations which apply to SSI benefits, 20 C.F.R. §§ 416.901 et seq., are generally the same for both types of benefits. Accordingly, while Plaintiff seeks both disability and SSI benefits in this case, to the extent cases cited herein may reference one or both sets of regulations, the Court notes the cases and regulations cited herein are applicable to both claims addressed in the instant matter.

RFC.   20 C.F.R. § 416.920(e); Nowden v. Berryhill, No. EDCV 17-00584-JEM, 2018 WL 1155971, at *2 (C.D. Cal. Mar. 2, 2018).  The RFC is "the most [one] can still do despite [her] limitations" and represents an assessment "based on all the relevant evidence."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).   The RFC must consider all of the claimant's impairments, including those that are not severe.  20 C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security Ruling ("SSR") 96-8p, available at 1996 WL 374184 (Jul. 2, 1996).[6]  A determination of RFC is not a medical opinion, but a legal decision that is expressly reserved for the Commissioner.  See 20 C.F.R. § 404.1527(d)(2) (RFC is not a medical opinion); 20 C.F.R. § 404.1546(c) (identifying the ALJ as responsible for determining RFC). "[I]t is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity."  Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001).

At step five, the burden shifts to the Commissioner, who must then show that there are a significant number of jobs in the national economy that the claimant can perform given her RFC, age, education, and work experience.  20 C.F.R. § 416.912(g); Lounsburry v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006).  To do this, the ALJ can use either the Medical Vocational Guidelines ("grids"), or call a VE.  See 20 C.F.R. § 404 Subpt. P, App. 2; Lounsburry, 468 F.3d at 1114; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001).  "Throughout the five-step evaluation, the ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.' "  Ford, 950 F.3d at 1149 (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)).

### B.    Standard of Review

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits.  42 U.S.C. § 405(g).  In determining whether to reverse an ALJ's decision, the Court reviews only those issues raised by the party challenging the decision.  See Lewis v. Apfel, 236 F.3d 503, 517 n.13 (9th Cir. 2001).

---

[6] SSRs are "final opinions and orders and statements of policy and interpretations" issued by the Commissioner.  20 C.F.R. § 402.35(b)(1).  While SSRs do not have the force of law, the Court gives the rulings deference "unless they are plainly erroneous or inconsistent with the Act or regulations."  Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989); see also Avenetti v. Barnhart, 456 F.3d 1122, 1124 (9th Cir. 2006).

Further, the Court's review of the Commissioner's decision is a limited one; the Court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); Biestek v. Berryhill, 139 S. Ct. 1148, 1153 (2019). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." Thomas v. Barnhart (Thomas), 278 F.3d 947, 954 (9th Cir. 2002) (quoting Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)); see also Dickinson v. Zurko, 527 U.S. 150, 153 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard). "[T]he threshold for such evidentiary sufficiency is not high." Biestek, 139 S. Ct. at 1154. Rather, "[s]ubstantial evidence means more than a scintilla, but less than a preponderance; it is an extremely deferential standard." Thomas v. CalPortland Co. (CalPortland), 993 F.3d 1204, 1208 (9th Cir. 2021) (internal quotations and citations omitted); see also Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996). Even if the ALJ has erred, the Court may not reverse the ALJ's decision where the error is harmless. Stout, 454 F.3d at 1055–56. Moreover, the burden of showing that an error is not harmless "normally falls upon the party attacking the agency's determination." Shinseki v. Sanders, 556 U.S. 396, 409 (2009).

Finally, "a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." Hill v. Astrue, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)). Nor may the Court affirm the ALJ on a ground upon which he did not rely; rather, the Court may review only the reasons stated by the ALJ in his decision. Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); see also Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003). Nonetheless, it is not this Court's function to second guess the ALJ's conclusions and substitute the Court's judgment for the ALJ's; rather, if the evidence "is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." Ford, 950 F.3d at 1154 (quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)).

///

///

1

**IV.**

2

**THE ALJ'S FINDINGS OF FACT AND CONCLUSIONS OF LAW**

3       The ALJ conducted the five-step disability analysis and made the following findings of

4   fact and conclusions of law as of the date of the decision, July 17, 2020 (AR 22–33):

5       At step one, the ALJ determined Plaintiff meets the insured status requirements of the

6   Social Security Act through December 31, 2021, and Plaintiff has not engaged in substantial

7   gainful activity since December 31, 2016, the alleged onset date.  (AR 22 (citing 20 C.F.R. §§

8   404.1571 et seq.; 416.971 et seq.).)

9       At step two, the ALJ determined Plaintiff has the following severe impairments:

10   degenerative disc disease of the lumbar and cervical spine, fibromyalgia, right 4th trigger finger,

11   bilateral carpal tunnel syndrome, and polyarthropathies with raised antibody titer.  (Id. (citing 20

12   C.F.R. §§ 404.1520(c); 416.920(c)).)  The ALJ also noted Plaintiff has nonsevere impairments of

13   hyperthyroidism, pre-diabetes, and obesity.   (AR 22–23.)    Nonetheless, the ALJ noted he

14   considered any potential effects these purported impairments might cause or contribute to, in

15   combination with Plaintiff's other impairments to the RFC.  (AR 23.)

16       At step three, the ALJ determined Plaintiff does not have an impairment or combination of

17   impairments that meets or medically equals the severity of one of the listed impairments in 20

18   C.F.R. Part 404, Subpart P, Appendix 1.  (AR 23–25 (citing 20 C.F.R. §§ 404.1520(d); 404.1525;

19   404.1526; 416.920(d); 416.925; 416.926).)

20       Before proceeding to step four, the ALJ determined Plaintiff has the RFC to perform:

21

**light work as defined in 20 CFR 404.1567(b) and 416.967(b)
meaning she is able to lift and/or carry 20 pounds occasionally**

22

**and she can lift and/or carry up to 10 pounds frequently.  She
can sit for approximately six hours in an eight-hour workday**

23

**and she can stand or walk for about six hours in an eight- hour
workday.  She can occasionally climb ramps and stairs but**

24

**never climb ladders, ropes, or scaffolds.  She can frequently
balance as part of the job requirements.  She can occasionally**

25

**stoop, crouch, kneel and crawl.  She can handle and finger with
the right upper extremity on a frequent basis. She should never**

26

**work around unprotected heights or moving and/or dangerous
machinery.**

27

28   (AR 25–30 (citing 20 C.F.R. §§ 404.1529; 416.929; SSR 16-3p, available at 2017 WL 5180304

1 | (Oct. 25, 2017)) (emphasis in original).)

2 | At step four, the ALJ found Plaintiff is unable to perform her past relevant work.  (AR 30–

3 | 31 (citing 20 C.F.R. §§ 404.1565; 416.965).)

4 | At step five, the ALJ noted Plaintiff was born on December 10, 1967, and was 49 years

5 | old (which is defined as a younger individual age 18–49) on the alleged disability onset date, but

6 | that Plaintiff subsequently changed age category to "closely approaching advanced age"; Plaintiff

7 | has at least a high school education; and transferability of job skills is not material to the

8 | determination of disability because Plaintiff's past relevant work is unskilled.  (AR 31 (citing 20

9 | C.F.R. §§ 404.1563; 416.963; 404.1564; 416.964; 404.1568; 416.968).)  Considering Plaintiff's

10 | age, education, work experience, and RFC, the ALJ determined there are jobs that exist in

11 | significant numbers in the national economy that Plaintiff can perform, such as:

12 | • Housekeeper cleaner (Dictionary of Occupational Titles ("DOT") 323.687-014), a light

13 |   exertion work position with a specific vocational preparation ("SVP") level of 2, and

14 |   approximately 328,000 jobs available in the national economy;

15 | • Cashier II (DOT 211.462-010), a light exertion work position with an SVP level of 2, and

16 |   approximately 859,000 jobs available in the national economy; and

17 | • Cafeteria attendant (DOT 311.677-010), a light exertion work position with an SVP level

18 |   of 2, and approximately 63,000 jobs available in the national economy.

19 | (AR 31–32 (citing 20 C.F.R. §§ 404.1569; 404.1569(a); 416.969; 416.969(a); 20 C.F.R. Part 404,

20 | Subpart P, Appendix 2; SSR 83-11, available at 1983 WL 31252 (Jan. 1, 1983); SSR 83-12,

21 | available at 1983 WL 31253 (Jan. 1, 1983); SSR 83-14, available at 1983 WL 31254 (Jan. 1,

22 | 1983); SSR 85-15, available at 1985 WL 56857 (Jan. 1, 1985)).)  With respect to the identified

23 | jobs, the ALJ noted the VE's testimony was consistent with the DOT and SCO and, with respect

24 | to matters such as unilateral or bilateral reaching/handling/fingering, off task behavior, rest

25 | periods, absenteeism, and simple, routine, repetitive tasks, the VE's testimony was based on her

26 | education and professional experience.  (AR 32.)

27 | Therefore, the ALJ found Plaintiff has not been under a disability, as defined in the Social

28 | Security Act, from December 31, 2016 (the alleged onset date), through November 10, 2020 (the

1  date of decision).  (AR 32–33 (citing 20 C.F.R. §§ 404.1520(g); 416.920(g)).)

2  **V.**

3  **DISCUSSION**

4  Plaintiff purports to assert a single issue on appeal, which she characterizes as "[t]he ALJ

5  erred by failing to develop the record and obtain an assessment of Plaintiff's physical limitations

6  from a treating or examining source, improperly relying upon his own lay interpretation of the

7  medical data, and failing to properly consider Plaintiff's subjective complaints of pain."  (ECF

8  No. 20 at 1.)  From this poorly-constructed verbiage, the Court determines Plaintiff is actually

9  asserting the following two issues: (1) whether the ALJ had a duty to further develop the record,

10  and (2) whether the ALJ properly evaluated Plaintiff's subjective pain testimony.  While the

11  Court need not consider claims not actually argued specifically and distinctly in a party's opening

12  brief, Lewis, 236 F.3d at 517 n.13; Indep. Towers of Wash. v. Wash., 350 F.3d 925, 929 (9th Cir.

13  2003), in an abundance of caution, the Court shall examine both issues herein.

14  **A.    Duty to Further Develop the Record/Evaluation of "Clinical" Medical Data**

15  1.    Legal Standard

16  Generally, "[t]he claimant has the burden of proving that [he] is disabled."  Smolen, 80

17  F.3d at 1288.  However, "[t]he ALJ always has a 'special duty to fully and fairly develop the

18  record and to assure that the claimant's interests are considered … even when the claimant is

19  represented by counsel.'"  Celaya v. Halter, 332 F.3d 1177, 1183 (9th Cir. 2003) (quoting Brown

20  v. Heckler (Heckler), 713 F.2d 441, 443 (9th Cir. 1983)) (noting, by comparison, the ALJ has a

21  "heightened" responsibility to develop the record when a claimant is not represented by counsel).

22  Nevertheless, "[a]n ALJ's duty to develop the record further is triggered only when there

23  is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the

24  evidence."  Mayes v. Massanari, 276 F.3d 453, 459–60 (9th Cir. 2001); Bayliss v. Barnhart, 427

25  F.3d 1211, 1217 (9th Cir. 2005) (citing 20 C.F.R. §§ 404.1512(e), 416.912(e)); see also Brown v.

26  Berryhill (Brown), 697 Fed. App'x 548, 549 (9th Cir. 2017) ("Because the record evidence was

27  not ambiguous and the record was sufficient to allow for proper evaluation of the evidence, the

28  ALJ was not required to re-contact Brown's doctors or further develop the record … [and] the

ALJ provided specific, clear and convincing reasons for finding Brown's testimony regarding his symptom severity was not fully credible, including that Brown's testimony was inconsistent with his daily activities.").

2.   Analysis

Plaintiff argues that, after the ALJ discounted the prior administrative findings of State agency doctors Tayloe and Arnold as "not persuasive," he was required to obtain updated opinion evidence because there was no other opinion evidence in the record; Plaintiff appears to conclude the failure to obtain another medical opinion means the ALJ improperly relied on his own lay interpretation of clinical medical data to formulate the RFC.  (ECF No. 20 at 9; ECF No. 25 at 2.) Plaintiff also appears to argue that, because the State doctors did not consider the medical records submitted subsequent to their findings, the ALJ was required to further develop the record by obtaining another medical opinion to review and opine on those records.  (ECF No. 20 at 9–10.)

The Court finds Plaintiff's arguments are unsupported in law and therefore unavailing.  As noted, the Ninth Circuit has explained that ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to "conduct an appropriate inquiry."  Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (quoting Smolen, 80 F.3d at 1288 ("If the ALJ thought he needed to know the basis of Dr. Hoeflich's opinions in order to evaluate them, he had a duty to conduct an appropriate inquiry, for example, by subpoenaing the physicians or submitting further questions to them.")).  Examples of situations under which further developing the record may be required include when the additional evidence needed is not contained in the records of the claimant's medical sources, and when highly technical or specialized medical evidence not available from the claimant's medical sources is needed.  20 C.F.R. § 416.919a(b).  Here, however, Plaintiff does not contend the evidence in the record was ambiguous.  Nor, does Plaintiff indicate the record was incomplete in the manners contemplated by the Regulations.  Furthermore, though she suggests the subsequent medical records evaluated by the ALJ were of such a clinical nature that the ALJ was not qualified to interpret them, Plaintiff does not identify a single "clinical" record to substantiate her argument.  Indeed, it appears the ALJ did not find that the record was inadequate to allow for

1    proper evaluation of the evidence, and he provided a thorough review of Plaintiff's medical

2    records in support of the RFC determination.  Because the determination of whether the ALJ had

3    a duty to develop the record is fact-specific, Plaintiff's generalized arguments are insufficient.

4        Plaintiff also contends the ALJ failed to explain how he reached various conclusions

5    regarding Plaintiff's symptoms, perhaps in support of an argument that the record was inadequate

6    and required further development via a new medical opinion.[7]  More specifically, Plaintiff argues

7    the ALJ failed to discuss her subsequent medical records showing "new or worsening medical

8    conditions," such as increasing fatigue, reduced strength in the upper and lower extremities, and

9    decreased range of motion, with difficulty sitting, standing, and walking (ECF No. 20 at 9, 11;

10   ECF No. 25 at 2); the impact of Plaintiff's degenerative joint disease in the knees (ECF No. 20 at

11   11); her exertional functional capacity and use of her hands (id.); or how he reached the

12   conclusion that Plaintiff can frequently handle and finger on the right, with no limitations on the

13   left (id.).

14       However, the Court finds a plain reading of the ALJ's decision belies these arguments.  In

15   assessing Plaintiff's RFC for a reduced range of light work, the ALJ considered evidence of

16   associated positive clinical findings, including lumbar and cervical spine imaging documenting

17   degenerative changes (AR 26–27 (citing AR 382–83, 385–88, 390–99, 403, 411, 427–28, 437–

18   42, 448–84, 490–521, 537–74, 596, 598, 601–04, 608–18, 623)).  However, the ALJ also noted

19   Plaintiff routinely had unremarkable findings upon physical examination (AR 29 (citing AR 370,

20   372, 384, 390–91, 403–04, 437–42, 523–24, 534, 550, 556, 560, 578, 580, 589–90, 596)).  For

21   example, Plaintiff had full motor strength throughout all four extremities, she had intact sensation

22   to light touch, intact coordination on finger to nose symmetrically, and had no focal neurological

23

24   _____

[7] Relatedly, to the extent Plaintiff suggests the record was deficient and suggests the ALJ was required to "further develop" the record in order to flesh out missing treatment records, the Court notes it is Plaintiff's burden to submit evidence and prove she is disabled.  Smolen, 80 F.3d at 1288.  Notably, while Plaintiff alleges a date of disability onset beginning December 31, 2016, the ALJ notes she produced no records of treatment for the 12-month period prior to the alleged onset date.  (AR 26.)  Further, Plaintiff submitted an untimely request to supplement the record with medical records from Dr. Bhinder for the period of January 2015 through September 2020, which Plaintiff did not request from Dr. Bhinder until October 23, 2020.  (AR 19 (citing AR 321).)  Incidentally, the ALJ comments on the fact that Dr. Bhinder did not begin to treat Plaintiff until March 2019.  (See AR 20.)  Furthermore, even though the ALJ permitted Plaintiff to submit additional records for consideration prior to the date of issuance of his decision, Plaintiff never submitted any additional records.  Plaintiff's failure to submit medical records to prove her own disability cannot be imputed to the ALJ as a failure to develop the record where no such duty has been triggered.

25

26

27

28

deficits.  (Id.)  And, despite some limited range of motion due to neck and low back pain, Plaintiff exhibited no signs of atrophy or edema.  (Id. (citing 484–85, 596).)  The ALJ also noted Plaintiff is independent with self-care including cleaning, cooking, and shopping (AR 25–26 (citing AR 39–66, 265–68, 402–36, 592)), and she walks for exercise and ambulates with a normal gait and no assistive device (id. (citing AR 39–66, 592)).

The ALJ considered Plaintiff's degenerative joint disease of the bilateral knees and hands and carpal tunnel symptoms, and noted the medical record is devoid of evidence of subluxation, ankyloses, instability, or bony destruction in any joint (AR 24 (citing AR 339–31, 566–68, 573–74, 629)); Plaintiff's physical examination findings show no more than mild synovitis and no signs of joint deformity (id. (citing AR 370, 372, 390–91, 403–04, 437–42, 484, 523–24, 534, 550, 556, 560, 578, 580, 589–90, 596)); x-ray and imaging do not show signs of joint effusion (id. (citing AR 339–31, 566–68, 573–74, 629)); "electromyography of the bilateral upper extremities showed normal limits at the left forearm and mild carpal tunnel syndrome at the right forearm with borderline right median motor latency and mild bilateral median sensory latency prolongation" (AR 25 (citing AR 592)); neurological exam findings noted no focal neurological deficits (id. (citing AR 370, 372, 390–91, 403–04, 437–42, 484, 523–24, 534, 550, 556, 560, 578, 580, 589–90, 596)); and Plaintiff's records indicate she has 5 out of 5 power in the upper extremities, intact deep tendon reflexes in upper extremities, and sensation is intact and normal to light touch.  Based on the objective medical evidence, the ALJ concluded Plaintiff's activities demonstrate sufficient fine and gross manipulation, but with some limitations, more at the right forearm than the left.  Hence, the ALJ determined Plaintiff was capable of light work, but with additional handling and fingering limitations and other postural and environmental restrictions.  (Id.)

Finally, the Court notes the ALJ plainly considered and discussed Plaintiff's records through 2020 (see AR 23–30); thus, Plaintiff's argument to the contrary is unavailing.  To the extent Plaintiff asserts her newer records demonstrate worsening medical conditions, contrary to the ALJ's interpretation of these records, the Court finds Plaintiff's argument, at most, constitutes an attempt to present an alternative interpretation of the evidence.  However, this is not sufficient

to establish reversible error and the Court "will not engage in second-guessing" where the ALJ has supported his findings with substantial evidence from the record.  Thomas, 278 F.3d at 959; Ford, 950 F.3d at 1154; Burch, 400 F.3d at 679; see also Drouin v. Sullivan, 966 F.2d 1255, 1258 (9th Cir. 1992) (the court must defer to the decision of the ALJ where evidence exists to support more than one rational interpretation).

Plaintiff's contention that the ALJ was required to further develop the record solely because there is no physician opinion that reviews the medical records submitted subsequent to the prior administrative findings of Drs. Tayloe and Arnold is equally unavailing.  Notably, Plaintiff's contention is unsupported in law.  Indeed, Plaintiff does not cite to any legal authority to support her contention.  Rather, Ninth Circuit caselaw demonstrates an ALJ does not need to procure an additional physician opinion to review unexamined medical records where the medical notes are unambiguous.  See Brown, 697 Fed. App'x at 549.  To this point, the Court notes there is always a gap in time between a non-examining State agency physician's review at the initial and reconsideration levels and the ALJ's subsequent hearing decision, and "claimants routinely continue pursuing care in the interim thereby generating new medical records.  If the mere passage of time and presence of additional medical evidence in the record established ambiguity," then a consultative examination or updated medical opinion would be required in every single Social Security case.  See Corwin v. Kijakazi, No. 1:20-cv-00394-GSA, 2021 WL 5771658, at *6 (E.D. Cal. Dec. 6, 2021).  Further, the Ninth Circuit directly rejected a similar argument asserted by the claimant, regarding later-obtained evidence that was not reviewed by the state agency physicians.  In upholding the ALJ's reliance on these medical opinions, which did not discuss the subsequent medical records, the appellate court explained, "there is always some time lapse between a consultant's report and the ALJ hearing and decision, and the Social Security regulations impose no time limit on such a gap in time.  At the time they issued their opinions, the non-examining experts had considered all the evidence before them, satisfying the requirements set forth in 20 C.F.R. § 404.1527(c)(3)."  Owen v. Saul, 808 Fed. App'x 421, 423 (9th Cir. 2020).  Thus, Plaintiff has not met her burden of showing the ALJ was required to further develop the record in this case.  See Graham v. Apfel, 129 F.3d 1420, 1423 (11th Cir. 1997).

Finally, the Court addresses Plaintiff's contention that the ALJ improperly relied on his own lay interpretation of imaging, laboratory results, and clinical findings, which is insufficient to support the RFC.  (See ECF No. 25 at 2.)  As previously noted, Plaintiff does not specifically identify any lab result or clinical data in the record in support of her vague and generalized argument that an ALJ cannot interpret medical data to reach an RFC determination; she merely presumes the ALJ improperly interpreted raw medical data because there is no additional doctor's opinion reviewing the records submitted subsequent to the State agency doctors' findings.  Therefore, Plaintiff has made no showing that the ALJ interpreted raw data or other technical review beyond merely synthesizing, weighing, and resolving conflicts in the medical evidence presented in the doctor's notes, assessments, and findings—as the ALJ is charged to do under the SSA Regulations.

To this point, the Court notes Plaintiff's argument has been asserted repeatedly by claimants in the Eastern District of California.  It is not well-taken.  In particular, the Court notes Plaintiff accuses the ALJ of improperly endeavoring to "play doctor" by referencing medical records regarding Plaintiff's " 'inflammatory markers,' 'positive ANA and raised antibody titer,' 'diagnostic test results,' 'synovitis,' intermittently reduced strength motor and sensory latency, foraminal stenosis and SI joint degeneration," in support of his ultimate RFC determination (ECF No. 25 at 2–3); while in the same breath arguing that the ALJ failed to support his conclusions, such as the finding that Plaintiff can frequently handle and finger on the right with no limitations on the left, "despite repeated documentation of synovitis in the bilateral hands with pain and stiffness" (id. at 3) and Plaintiff's "severe foraminal stenosis in the cervical spine with indentation on the spinal cord …." (id.), or "point to any substantial evidence that contradicts Plaintiff's reported symptoms" (id. at 3–4).  It is thus somewhat perplexing that Plaintiff wishes to both preclude the ALJ from referencing medical terminology and also fault the ALJ for not addressing the same medical details she herself raises.

In fact, the reason Plaintiff's argument seems internally inconsistent is because Plaintiff's position is blatantly contradicted by the Regulations, which reserves ultimate determination of the RFC exclusively for the Commissioner.  As defined by the Regulations, the RFC is an assessment

of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite his limitations.  20 C.F.R. §§ 404.1520(e), 404.1545(a), 416.945(a); see also Valencia v. Heckler, 751 F.2d 1082, 1085 (9th Cir. 1985) (RFC reflects current "physical and mental capabilities"); SSR 96-8p, at *2.  As previously noted, the RFC is not a medical opinion, but a legal decision that is expressly reserved for the Commissioner.  See 20 C.F.R. §§ 404.1527(d)(2); 404.1546(c); Vertigan, 260 F.3d at 1049 ("It is clear that it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity.") (citing 20 C.F.R. § 404.1545).

It therefore falls squarely within the ALJ's province to synthesize the medical evidence, resolve conflicts and ambiguities in the medical testimony, and determine credibility.  See, e.g., Lingenfelter v. Astrue, 504 F.3d 1028, 1042 (9th Cir. 2007) ("When evaluating the medical opinions of treating and examining physicians, the ALJ has discretion to weigh the value of each of the various reports, to resolve conflicts in the reports, and to determine which reports to credit and which to reject."); Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 603 (9th Cir. 1999) (holding ALJ was "responsible for resolving conflicts" and "internal inconsistencies" within doctor's reports; Tommasetti v. Astrue, 533 F.3d 1035, 1041–42  (9th Cir. 2008) ("[T]he ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence."); Benton, 331 F.3d at 1040 (where "the record contains conflicting medical evidence, the ALJ is charged with determining credibility and resolving the conflict.").  Hence, "[t]he ALJ's RFC determination need not precisely reflect any particular medical provider's assessment."  Althoff-Gromer v. Comm'r of Soc. Sec., No. 2:18-cv-00082-KJN, 2019 WL 1316710, at *13 (E.D. Cal. Mar. 22, 2019) (citing Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1222–23 (9th Cir. 2010)); see also Chavez v. Colvin, 654 Fed. App'x 374, 375 (10th Cir. 2016) (ALJ need not "parrot … exact descriptions of … limitations" to reach an RFC determination consistent with the medical record and claimant's limitations); Carver v. Colvin, 600 Fed. App'x 616, 620 (10th Cir. 2015) (finding ALJ "sufficiently captured the essence of the Section III functional limitations," despite not repeating limitations as stated in the medical opinions "verbatim"; and commenting, "[t]o conclude otherwise would parse the ALJ's language too finely.").

Indeed, not only does the RFC determination fall exclusively under the ALJ's province; the Regulations and controlling legal authorities *require* an ALJ to evaluate the objective medical evidence in the record.  See 20 C.F.R. § 404.1520b ("After we review all of the evidence relevant to your claim, we make findings about what the evidence shows.").  This necessarily includes consideration of "medical signs" (which are "shown by medically acceptable diagnostic techniques") and "laboratory findings" (including MRIs and x-rays).   See 20 C.F.R. §§ 404.1513(a)(1); 404.1502(c) (defining laboratory findings); 404.1502(g) (defining medical signs). Furthermore, contrary to Plaintiff's assertions, "ALJs need not seek the opinion of a medical expert every time they review new medical evidence and make a[n] RFC determination." Bufkin v. Saul, 836 Fed. App'x 578, 579 (9th Cir. 2021).   Rather, in reviewing whether an ALJ committed error in determining the RFC, the relevant inquiry is whether the medical evidence supports the ALJ's finding.  Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1173–74 (9th Cir. 2008).

Here, the Court has determined the ALJ's RFC determination is supported by substantial evidence in an unambiguous record.  A showing of unfairness or prejudice resulting from any failure to develop the record is required for remand, Graham, 129 F.3d at 1423, and Plaintiff has not made this requisite showing.  Accordingly, the Court will not disturb the ALJ's decision with respect to his evaluation of the medical record and RFC determination.

**B.      Evaluation of Plaintiff's Subjective Testimony**

Plaintiff argues the ALJ failed to identify clear and convincing reasons for rejecting her symptom testimony.  (ECF No. 20 at 12.)

1.      Legal Standard[8]

The ALJ is responsible for determining credibility,[9] resolving conflicts in medical

---

[8]   Although Defendant emphasizes disagreement with the "clear and convincing reasons" standard in order to preserve the issue for future appeals, Defendant argues the ALJ's reasons suffice under any standard.  (ECF No. 24 at 12 n.6.)  The Court further notes that, subsequent to the filings in this case, the Ninth Circuit provided additional clarification regarding this issue in Smartt v. Kijakazi, in which the appellate court indicated that the specific, clear, and convincing reasons requirement must fit within the overall substantial evidence standard.  Smartt, 53 F.4th 489, 499 (9th Cir. 2022) (holding clear and convincing standard is the applicable standard for weighing credibility in the Ninth Circuit).

[9]   SSR 16-3p applies to disability applications heard by the agency on or after March 28, 2016.  Ruling 16-3p eliminated the use of the term "credibility" to emphasize that subjective symptom evaluation is not "an examination of an individual's character" but an endeavor to "determine how symptoms limit ability to perform work-related

testimony, and resolving ambiguities.  Andrews, 53 F.3d at 1039.  A claimant's statements of pain or other symptoms are not conclusive evidence of a physical or mental impairment or disability.  42 U.S.C. § 423(d)(5)(A); SSR 16-3p; see also Orn, 495 F.3d at 635 ("An ALJ is not required to believe every allegation of disabling pain or other non-exertional impairment.").

Rather, an ALJ performs a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible.  See Garrison v. Colvin, 759 F.3d 995, 1014 (9th Cir. 2014); Smolen, 80 F.3d at 1281; SSR 16-3p, at *3.  First, the claimant must produce objective medical evidence of an impairment that could reasonably be expected to produce some degree of the symptom or pain alleged.  Garrison, 759 F.3d at 1014; Smolen, 80 F.3d at 1281–82.  If the claimant satisfies the first step and there is no evidence of malingering, "the ALJ may reject the claimant's testimony about the severity of those symptoms only by providing specific, clear, and convincing reasons for doing so."  Lambert v. Saul, 980 F.3d 1266, 1277 (9th Cir. 2020) (citations omitted).

> If an ALJ finds that a claimant's testimony relating to the intensity of his pain and other limitations is unreliable, the ALJ must make a credibility determination citing the reasons why the testimony is unpersuasive.  The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints.  In this regard, questions of credibility and resolutions of conflicts in the testimony are functions solely of the Secretary.

Valentine v. Astrue, 574 F.3d 685, 693 (9th Cir. 2009) (quotation omitted); see also Lambert, 980 F.3d at 1277.

Subjective pain testimony "cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence."  See Vertigan, 260 F.3d at 1049 ("The fact that a claimant's testimony is not fully corroborated by the objective medical findings, in and of itself, is not a clear and convincing reason for rejecting it."); see also 20 C.F.R. § 404.1529(c)(2) ("[W]e will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements.").  Rather, where a claimant's symptom testimony is not fully substantiated by the objective medical record, the ALJ must

activities."  SSR 16-3p, at *1-2.

provide an additional reason for discounting the testimony.  See Burch, 400 F.3d at 680–81; see also Stobie v. Berryhill, 690 Fed. App'x 910, 911 (9th Cir. 2017) (finding ALJ gave two specific and legitimate clear and convincing reasons for rejecting symptom testimony: (1) insufficient objective medical evidence to establish disability during the insured period; and (2) symptom testimony conflicted with the objective medical evidence).

Nevertheless, the medical evidence "is still a relevant factor in determining the severity of [the] claimant's pain and its disabling effects."  Burch, 400 F.3d at 680–81; Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001); SSR 16-3p (citing 20 C.F.R. § 404.1529(c)(2)).  Indeed, Ninth Circuit caselaw has distinguished testimony that is "uncorroborated" by the medical evidence from testimony that is "contradicted" by the medical records, deeming the latter sufficient on its own to meet the clear and convincing standard.  See Hairston v. Saul, 827 Fed. App'x 772, 773 (9th Cir. 2020) (quoting Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1160 (9th Cir. 2008) (affirming ALJ's determination claimant's testimony was "not entirely credible" based on contradictions with medical opinion)) ("[c]ontradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony."); see also Woods v. Comm'r of Soc. Sec., No. 1:20-cv-01110-SAB, 2022 WL 1524772, at *10 n.4 (E.D. Cal. May 13, 2022) ("While a *lack* of objective medical evidence may not be the sole basis for rejection of symptom testimony, inconsistency with the medical evidence or medical opinions can be  sufficient." (emphasis in original)).

Additional factors an ALJ may consider include the location, duration, and frequency of the pain or symptoms; factors that cause or aggravate the symptoms; the type, dosage, effectiveness or side effects of any medication; other measures or treatment used for relief; conflicts between the claimant's testimony and the claimant's conduct—such as daily activities, work record, or an unexplained failure to pursue or follow treatment—as well as ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, internal contradictions in the claimant's statements and testimony, and other testimony by the claimant that appears less than candid.  See Ghanim v. Colvin, 763 F.3d 1154, 1163 (9th Cir. 2014); Tommasetti, 533 F.3d at 1039; Lingenfelter, 504 F.3d at 1040; Smolen, 80 F.3d at 1284.  Thus,

the ALJ must examine the record as a whole, including objective medical evidence; the claimant's representations of the intensity, persistence and limiting effects of her symptoms; statements and other information from medical providers and other third parties; and any other relevant evidence included in the individual's administrative record.  SSR 16-3p, at *5.

Finally, so long as substantial evidence supports the ALJ's assessment of a claimant's subjective complaint, the Court "will not engage in second-guessing."  Thomas, 278 F.3d at 959.

### 2.   Plaintiff's Symptom Allegations

Plaintiff alleges her low back pain makes standing for long periods painful to her back and shoulders, she has radiating pain to her fingers, and she can only do household chores for three to five minutes at a time, with five-minute breaks in-between until she finishes.  She alleges she shops in stores once a week with frequent rest breaks.  She claims she experiences difficulty climbing more than ten steps without pain, she can only lift less than five pounds, and not above shoulder level, and she has poor grip strength and her fingers often lock and cramp.

### 3.   Analysis

The ALJ determined Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms are not entirely consistent with the medical and non-medical evidence of record.  (AR 26.)   The ALJ provided several bases for this determination, which the Court deems to constitute specific, clear, and convincing reasons.

#### a.   **Symptoms Unsupported by Medical Record**

As to Plaintiff's report of low back pain and neck pain that radiated down her arms and hands, and weakness in the arms and hands, the ALJ acknowledged records showing degenerative disc disease, but noted imaging of the lumbar spine showed mild to moderate canal stenosis at L4-5 and L3-4; mild canal stenosis at L5-S1; moderate bilateral foraminal stenosis at L4-5; and bilateral foraminal stenosis at L3-4 and L5-S1.  (AR 27.)   Cervical spine imaging similarly showed mild to moderate stenosis, with no cord compression.  (Id.)   The ALJ also noted Plaintiff's doctor, Kunhi Veedu noted recent imaging and x-ray results showed "no significant degenerative disc disease or root compression."  (Id.)

While Plaintiff reported having joint pain in her arms, hands and right fourth finger spasms in 2017, the ALJ noted laboratory findings showed negative inflammatory markers and negative HLA-B27; and x-rays showed mild degenerative joint disease but no evidence of fracture or dislocation; and the bony structures were intact. (Id.) Updated x-rays and laboratory results in 2019 also showed negative inflammatory markers and negative HLA-B27, no fractures in the hands, and no significant chronic changes. (AR 28.) Rather, the x-rays showed the wrist joint spaces were preserved, the carpal and metacarpal bones appeared unremarkable, and Plaintiff demonstrated digit alignment. (Id.)

The ALJ also noted Plaintiff's physical examinations routinely yielded unremarkable findings:

> Providers noted the claimant with 5/5 motor strength throughout the bilateral upper and lower extremities and noted she moved all extremities. They noted she had intact sensation to light touch, intact coordination on finger to nose symmetrically, and no focal neurological deficits. They noted she had limited range of motion due to neck and low back pain. However, they noted no signs of atrophy, intact cranial nerve function from II to XII, and intact deep tendon reflexes. In 2020, they noted no edema but positive synovitis without erythema. They noted no decrease in range of motion. (9F/37-38; 12F/22.)

(AR 29.) Further, the ALJ noted Plaintiff was prescribed heat therapy, physical therapy, medications, and occasional Toradol injections, all of which he characterized as "conservative" treatment. (AR 27–29.) On this record, the ALJ concluded the alleged intensity, persistence and limiting effects of Plaintiff's symptoms was unsupported by the medical record.

Plaintiff argues that discrediting her symptoms solely because the severity of her symptoms was unsupported by objective medical evidence was improper. (ECF No. 20 at 12, 13.) This is an accurate statement. As the Court noted, subjective pain testimony "cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence" Vertigan, 260 F.3d at 1049, but the ALJ must provide an additional reason for discounting the testimony, Burch, 400 F.3d at 680–81; Stobie, 690 Fed. App'x at 911. However, as the Court also noted, testimony that is "contradicted" by the medical records, is sufficient on its own to meet the clear and convincing standard. Hairston, 827 Fed. App'x at 773; Carmickle, 533 F.3d at

1160.[10]

### b.    Symptoms Inconsistent with Medical Record

Here, the ALJ also discusses how Plaintiff's testimony is inconsistent with the record.

For example, even though Plaintiff alleges a disability onset date of December 31, 2021, she collected unemployment insurance benefits in 2018.  (AR 22 (citing AR 238).)  As the ALJ reasoned, an award of such benefits requires the individual to seek work and attest they are ready and able to work; assuming Plaintiff made such representations in order to obtain unemployment benefits, the ALJ noted Plaintiff's prior statements were inconsistent with her allegation of disability since December 2016.  This constitutes a clear and convincing reason to discount Plaintiff's subjective testimony.  Ghanim, 763 F.3d at 1163; Tommasetti, 533 F.3d at 1039.

The ALJ also noted Plaintiff's allegations were inconsistent with the prior administrative findings of the State agency doctors Tayloe and Arnold.  (AR 30.)  In general, Drs. Tayloe and Arnold opined Plaintiff could lift and/or carry 25 pounds frequently and occasionally; could sit, stand, or walk for about six hours in an eight-hour workday; frequently climb ramps, stairs, balance, stoop, kneel, crouch, and crawl; occasionally climb ladders, ropes, or scaffolds; and frequently finger at bilateral upper extremities.[11]  These findings, which resulted in opinions of non-disability, are inconsistent with Plaintiff's allegations of total disability, as well as her specific allegations as to her ability to lift/carry less than five pounds.  Further, the ALJ only deemed the opinions "not persuasive" to the extent that he found Plaintiff's complaints warranted additional restrictions.  Namely, instead of finding Plaintiff capable of the "medium work" recommended by the State doctors, the ALJ he determined Plaintiff was only capable lifting/carrying up to 20 pounds occasionally and up to 10 pounds frequently, which is indicative of "light work," with additional restrictions.  Nonetheless, the state doctors' findings, which contradict Plaintiff's subjective allegations and which the ALJ relied upon to some extent, constitute a clear and convincing reason to discount Plaintiff's symptom testimony.  Carmickle,

---

[10] Curiously, Plaintiff appears to concede the ALJ indicated that he discounted Plaintiff's testimony not only because her symptomology was not supported by the medical records, but because it was *inconsistent* with it.  (ECF No. 20 at 12.)

[11] These findings are consistent with medium work, as defined under the regulations.  20 C.F.R. § 404.1567(c).

533 F.3d at 1160 (affirming ALJ's determination claimant's testimony was "not entirely credible" based on contradictions with medical opinion).

Furthermore, the Court notes the ALJ does provide additional reasons for discounting Plaintiff's testimony.

### c.    Activities of Daily Living ("ADLs")

Ninth Circuit caselaw demonstrates that ADLs may be grounds for discounting allegations that an impairment is so severe it is totally debilitating, even if such activities are not directly transferrable to a work setting.  See Molina v. Astrue, 674 F.3d 1104, 1112–13 (9th Cir. 2012), superseded by regulation on other grounds (noting "the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferrable to a work setting … Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment.") (internal citations omitted); see also Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989) (affirming the ALJ's decision where the claimant's allegations were inconsistent with activities of personal care, shopping, chores, riding public transportation, and driving); Burch, 400 F.3d at 680 (finding the ALJ properly discounted the claimant's allegations where the claimant's activities suggest higher functionality, including caring for personal needs, cooking, cleaning, shopping, and interacting with family).

Here, the ALJ noted Plaintiff's activities cut against her subjective symptom allegations. For example, the ALJ noted Plaintiff is independent with self-care including cleaning, cooking, and shopping (AR 25–26 (citing AR 39–66, 265–68, 402–36, 592)), and she walks for exercise and ambulates with a normal gait and no assistive device (id. (citing AR 39–66, 592)). Accordingly, the ALJ concluded Plaintiff's allegations as to the intensity and limiting effects of her impairments are inconsistent with her ADLs.  Based on the foregoing authorities, this finding constitutes a clear and convincing reason to support the ALJ's credibility determination.  Molina, 674 F.3d at 1112–13; Valentine, 574 F.3d at 693; see also Smartt, 53 F.4th at 499 ("An ALJ may also consider whether the claimant engages in activities inconsistent with the alleged symptoms.").

Plaintiff does not challenge the ALJ's consideration of her ADLs in any meaningful or substantive way, but merely asserts she should not be penalized for attempting to live a normal life in the face of her limitations.  (ECF No. 20 at 12 (citations omitted).)   However, this statement, without more, is insufficient to refute the ALJ's finding. As the Ninth Circuit has explained, "[e]ven where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." Molina, 674 F.3d at 1113; Valentine, 574 F.3d at 694 (while daily activities "did not suggest [Plaintiff] could return to his old job [they] did suggest that [Plaintiff's] later claims about the severity of his limitations were exaggerated").  Thus, even if Plaintiff's activities were not particularly extensive, the ALJ's conclusion that she was not as limited as she claimed was a reasonable and valid basis for discounting her allegations.

### d.    Conservative Treatment

Evidence that a claimant's medical treatment was relatively conservative may properly be considered in evaluating a claimant's subjective complaints.  See Tommasetti, 533 F.3d at 1039–40; Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007) ("[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment.") (citation omitted).

Here, the ALJ noted Plaintiff was prescribed heat therapy, physical therapy, medications, and occasional Toradol injections, which he deemed to be "conservative" treatment.  (AR 27–29.) The Court finds that Ninth Circuit caselaw supports the ALJ's determination that Plaintiff's treatment was conservative.   See Tommasetti, 533 F.3d at 1039–40 (claimant's treatment, including physical therapy, the use of anti-inflammatory medication, a transcutaneous electrical nerve stimulation unit, and a lumbosacral corset, were deemed "conservative"); Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits."); Agatucci v. Berryhill, 721 Fed. App'x 614, 618 (9th Cir. 2017) ("We uphold [the] ALJ's rational interpretation that, because [plaintiff's] condition did not necessitate surgery, her symptoms were not as debilitating as she alleged."); Woods v. Kijakazi, 32 F. 4th 785, 794 (9th

Cir. 2022) (affirming ALJ's discounting of subjective testimony based on "very conservative" treatment of mostly medication alone and a knee injection).

Based on the foregoing authorities, the ALJ's finding that Plaintiff's treatment was conservative constitutes another clear and convincing reason in support of discounting her subjective testimony.  Plaintiff, furthermore, does not address this finding.  Lewis, 236 F.3d at 517 n.13; Indep. Towers of Wash., 350 F.3d at 929; see also Ruiz v. Comm'r of Soc. Sec. Admin., 490 Fed. App'x. 907, 908–09 (9th Cir. 2012) (affirming ALJ's decision to deny benefits and concluding that, because the ALJ listed nine rationale for rejecting the claimant's testimony and the claimant challenged only one of the rationale, the ALJ's conclusion would still be supported by the unchallenged rationale).

### e.    Consideration of Symptom Testimony in RFC Determination

Finally, Plaintiff argues that, because the ALJ improperly discounted her symptom testimony, the RFC does not account for work-related limitations consistent with the severity of Plaintiff's physical impairments as they correspond to Plaintiff's symptoms.  (ECF No. 20 at 11.)

Having found the ALJ's adverse credibility determination regarding Plaintiff's testimony was appropriately supported by substantial evidence, however, Plaintiff's derivative RFC argument fails.  See Stubbs-Danielson, 539 F.3d at 1175–76 (rejecting a step five argument that "simply restates" arguments about medical evidence and testimony); Hairston, 827 Fed. App'x at 773 (summarily rejecting claimant's arguments that RFC and step-five findings were unsupported by substantial evidence as "derivative of her preceding arguments addressed and rejected above."); see also Embrey v. Bowen, 849 F.2d 418, 423 (9th Cir. 1988) (acknowledging there is no requirement that testimony for which the ALJ has provided specific and legitimate reasons to discount be included in the hypothetical given the VE).

### VI.

### CONCLUSION AND ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that:

1.    Plaintiff's appeal from the decision of the Commissioner of Social Security (ECF No. 20) is DENIED;

2.      Defendant's cross-motion for summary judgment (ECF No. 24) is GRANTED; and

3.      The Clerk of the Court is DIRECTED to enter judgment in favor of Defendant Commissioner of Social Security and against Plaintiff Margarita Hernandez Rivera and close this case.

IT IS SO ORDERED.

Dated:   **April 10, 2023**

_____
UNITED STATES MAGISTRATE JUDGE